IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHNATHON JAY HENRY,

    Plaintiff,

v.                                              CASE NO. 5:12-cv-34-RS-GRJ

OFFICER LIPFORD,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is presently before the Court on Defendant's Motion for Summary Judgment. (Doc. 76.) Plaintiff has filed a response in opposition to the motion (Doc. 81) and, with the Court's permission, Plaintiff also has filed a supplement to his response. (Doc. 101.) This matter is, therefore, ripe for review. For the reasons that follow, the undersigned recommends that Defendant's motion for summary judgment should be granted.

### I. FACTS

Taking the evidence in the light most favorable to Plaintiff, as the Court is required to do, the material facts are as follows.[1]

---

[1] In support of the motion for summary judgment, Defendant has submitted the following exhibits: Plaintiff's internal movement log; the declaration of Officer Lipford; use of force report log #2011-104-0126; a handheld video; a copy of Bureau of State Investigations case no. 11-1-9745; Plaintiff's DC4-642 mental health evaluations; DC4-529 Staff request/referral; DC4-643 individualized service plan review and discharge summary; and excerpts from Plaintiff's deposition. (Doc. 76, Exs. A-I.) Plaintiff has submitted a 35-page handwritten response to the motion for summary judgment, and

The case concerns a series of events on the morning of December 16, 2011, at Jackson C.I. It is undisputed by the parties that on December 16, 2011 Defendant Lipord, a correctional officer at Jackson C.I., applied chemical agents (pepper spray) to Plaintiff. The focus of the dispute and the focus of this motion for summary judgment is on the reason for the use of the chemical agent. Plaintiff alleges he had "an altercation" with Officer Lipford regarding Plaintiff declaring a psychological emergency. Plaintiff, who was being held in administrative confinement, asserts that he told Officer Lipford that he wanted to visit the mental health wing concerning the offense for which he was being held in confinement. The incident for which Plaintiff was being held in administrative confinement involved a previous incident in the mail room. Plaintiff says that Officer Lipford commented about Plaintiff's involvement in the mail room incident. Officer Lipford then, according to Plaintiff, applied pepper spray. Plaintiff points out that he never received a disciplinary report surrounding the pepper spray incident, thus, suggesting that he did not do anything to precipitate the use of pepper spray.

Defendant Lipford filed a detailed sworn declaration of the events. Officer Lipford avers that at 7:34 AM, while he was making his security rounds of the cell block he

---

has attached exhibits. (Doc. 81.) These exhibits include: copies of this Court's previous Orders; copies of Defendant's summary judgment exhibits; and copies of grievances Plaintiff filed. Plaintiff's response consists mostly of allegations about evidence being withheld during the discovery process (concerns the Court addressed in rulings on Plaintiff's several motions to compel and motions for sanctions.) Plaintiff also filed a supplement to his response in opposition, which is largely devoted to allegations of evidence destruction (Doc. 101), issues which the Court already has addressed and rejected in the Court's Order on Plaintiff's second and third motions for sanctions. (Doc. 98.)

observed Plaintiff in his cell attempting to harm himself by utilizing his state issued sheet tied in a noose and wrapped around his neck, with the other end tied to the top bunk. (Doc. 76, Ex. B ¶3.) Defendant Lipford ordered Plaintiff three times to stop his actions but Plaintiff refused to comply with the orders. After Plaintiff refused to comply with the orders to stop, Defendant Lipford applied three bursts from his state issued Oleorsin Capscium Canister to Plaintiff. *Id.* According to Defendant Lipford, the pepper spray was successful. Plaintiff removed the noose from around his neck. *Id.*

Because Defendant had used force to stop Plaintiff from injuring himself, consistent with policy, Defendant Lipford notified the control room of the need for a response team to assist with the situation. *Id.* ¶4. The response team, consisting of Sgt. Robert Dickens and Officer Patrick Stuart, arrived at Plaintiff's cell to assist at 7:45 AM. Consistent with standard procedure at Jackson C.I. and consistent with Defendant's correctional officer training, as soon as the response team arrived at Plaintiff's cell, Defendant Lipford exited the quad. *Id.* Consequently, Defendant Lipford avers that he was not present when Plaintiff's cell door was opened to remove Plaintiff from his cell. *Id.*

This series of events is important because Plaintiff claims that Defendant Lipford placed the noose in Plaintiff's cell after the incident to justify the use of the pepper spray. While Plaintiff says Officer Lipford placed the noose in his cell Plaintiff fails to provide any specific details or point to any evidence as to how, when or under what circumstances Officer Lipford could have entered his cell after the incident in order to place the noose. Plaintiff does not provide any sworn statement by him (or anyone else)

verifying that Defendant Lipford entered Plaintiff's cell at any time, a necessary evidentiary precondition to demonstrating that Defendant Lipford placed the noose in the cell after Plaintiff was pepper sprayed.

In contrast to the complete absence of any evidence demonstrating that Defendant Lipford entered Plaintiff's cell, Defendant Lipford has provided a detailed declaration of the events, which is largely supported by the other evidence of record.

According to Defendant's sworn declaration, shortly after the response team arrived another officer, Officer Traywick Benton, began recording the events at 7:52 AM on a hand held video camera. (Doc. 76, Ex. D, under seal.) The video begins with an introductory statement by Lt. Lisa Lawrence, standing in front of the locked cell. Notably, Defendant Lipford is not shown on the video, which is consistent with Officer Lipford's statement that he exited the quad after the response team arrived. Officer Lawrence is then shown walking down a hallway to a shower where the Plaintiff is shown washing off the pepper spray. He is being guarded by the response team, Sgt. Dickens and Officer Stuart. Officers Dickens and Stuart then restrain Plaintiff and escort him to the confinement triage room for medical examination. The video then shows a Nurse Porter conduct an exam. She notes that Plaintiff does not have any visible injuries. The video also documents that Plaintiff's mental health was assessed by Doctor Gordon. Notably, as part of the mental health assessment, at approximately 8:14 AM (22:45 on the video) Dr. Gordon went to Plaintiff's cell to review the noose. Six minutes later Dr. Gordon returns and states on the video that he examined the noose and found that it was serviceable and dangerous looking. Dr. Gordon concluded that

because of the potential danger created by the noose it was appropriate to place Plaintiff on self harm observation status. Accordingly, the video depicts the response team officers moving Plaintiff outside Y dorm to H dorm. The video ends when Plaintiff is placed securely in H dorm.

The video thus documents that Defendant Lipford was not at the scene after the response team removed Plaintiff from his cell. Further, it is evident from the video that Officers Dickens and Stuart of the response team were guarding Plaintiff the entire period of time commencing from the time Plaintiff was removed from his cell and then continuing until Plaintiff was relocated to H dorm. Thus, to the extent that Plaintiff alternatively suggests that either Officers Dickens or Stuart placed the noose in his cell the video documents that they could not have done so because they were with the Plaintiff the entire period of time. Lastly, the video evidences that within a short period of time after Plaintiff was taken to medical for a mental health assessment, Doctor Gordon found and inspected the noose in Plaintiff's cell and concluded that it was dangerous and serviceable, meaning that he noose was a rope someone would or could use for self injurious purposes.

Plaintiff brings claims against Officer Lipford for a violation of the Eighth Amendment for pepper spraying him, and for retaliation because Plaintiff alleges he previously filed complaints for guard misconduct.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988.) As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005.)

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks, 548 U.S. 521, 530 (2006)*. Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## III. DISCUSSION

### A. Eighth Amendment Claim

Plaintiff claims that Officer Lipford violated his Eighth Amendment rights by pepper spraying him without justification. The Eighth Amendment provides that no cruel and unusual punishments are to be inflicted. U.S. Const. Amend. VIII. In a prison setting, force is deemed legitimate under the Eighth Amendment as long as it is used "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986.) A variety of factors are considered in determining whether the force was applied maliciously or sadistically, including the extent of injury, the need for force, the relationship between that need and the amount of force used, the threat reasonably perceived by the prison officials applying it, and any efforts made to temper the severity of the force used. *Hudson v. McMillian,* 503 U.S. 1 (1992). A *de minimis* use of force, as evidenced by *no* injury, typically cannot support a claim of excessive use of force. *Id.* at 7-8.

The use of chemical agents on disruptive prisoners is not *per se* unconstitutional. *Danley v. Allen,* 540 F.3d 1298, 1307 (11th Cir. 2008) (*overruled on other grounds*) ("Pepper spray is an accepted non-lethal means of controlling unruly inmates[,]. . .[and a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders"); *Soto v. Dickey,* 744 F. 2d 1260, 1270 (7th Cir. 1984) ("The Supreme Court has never held, nor have we or any other court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se

violation of the Eighth Amendment . . ."); *Spain v. Procunier,* 600 F.2d 189, 196 (9th Cir. 1979) ("use of nondangerous quantities of [tear gas] in order to prevent a perceived future danger does not violate 'evolving standards of decency' or constitute an 'unnecessary and wanton infliction of pain.'") When chemical agents, however, are used unnecessarily, without penological justification, or for the purpose of punishing or harming an inmate, the use is unconstitutional.  *See Danley,* 540 F.3d at 1311 (holding that prolonged exposure to pepper spray due to a failure to properly decontaminate an inmate may form the basis of an Eighth Amendment claim); *Iko v. Shreve,* 535 F.3d 225, 239 (4th Cir. 2008) (use of additional bursts of pepper spray after inmate attempted to comply sufficiently alleged Eighth Amendment claim.)

Defendant contends that he did not violate Plaintiff's Eighth Amendment rights because the undisputed evidence demonstrates that Plaintiff used only a minimal amount of force as evidenced by the fact that Plaintiff did not suffer any injuries and because there was a justified need for the use of force to stop Plaintiff from attempting to hang himself with a bed sheet. Plaintiff maintains that Defendant Lipford violated his Eighth Amendment rights by pepper spraying him because Plaintiff declared a psychological emergency and insisted that he be taken to medical.

The key issue in the case concerns the noose. There is little question that if the Plaintiff was attempting to use a noose to harm himself Officer Lipford –  consistent with Department rules –  was justified in using pepper spray (after giving verbal commands to stop) to prevent Plaintiff from harming himself. Fla. Admin. Code R. 33-602.210(2)(g) (2011).   On the other hand, if Defendant Lipford used pepper spray for no reason other

than to injury Plaintiff such conduct would violate the Eighth Amendment even though Plaintiff did not sustain serious injuries.

After a careful review of the summary judgment evidence submitted by the parties, including the DVD containing the handheld video, the Court determines that there is no genuine dispute as to any material fact and that Defendant is entitled to summary judgment in his favor on Plaintiff's Eighth Amendment claim.  The only sworn evidence submitted by Plaintiff to support his claim are his conclusional allegations in the Second Amended Complaint that Officer Lipford "conspir[ed] to place a noose in Plaintiff's cell, apparently in an attempt to justify Officer Lipford's illegal actions of the unauthorized pepper spraying" and Plaintiff's statement that "Officer Lipford plant[ed] a noose in the Plaintiff's cell." (Doc. 13, pp. 5 & 7.) Conspicuously absent from the summary judgment record is any evidence that Officer Lipford entered the cell either before or after administering the pepper spray or any evidence that any of the other correctional officers at the scene were in a position to place the noose in the cell. Indeed, Plaintiff never even says in a sworn declaration that he did not have a noose but only that he "was neither a threat to institutional security or himself to warrant pepper spraying." (*Id.* p. 6.)

The Defendant, however, has provided a sworn declaration of the events and a hand held video by the response team to refute Plaintiff's conclusional allegations. In contrast to Plaintiff's conclusional claim Defendant states under oath in his declaration that he observed Plaintiff trying to harm himself with a noose made of his bed sheets in his cell.  (Doc. 76, Ex. B.)  After giving Plaintiff verbal commands to cease his behavior,

Defendants avers that he administered pepper spray to Plaintiff, which was successful in causing Plaintiff to cease his self-injurious behavior. *Id*. Notably, Defendant avers that after he administered the pepper spray, he notified the control room of his need for assistance, and remained close to Plaintiff's cell– without entering the cell– until the response team arrived. *Id*. Defendant states under oath that when the response team arrived:

> I exited the quad, and I was not present when Inmate Henry's cell door was opened so that he could be removed from his cell. Sgt. Dickens and Officer Stuart removed Inmate Henry from his cell, and escorted him to the confinement shower cell so that Inmate Henry could receive a cool water shower. (Id.) Removing one's self from a use of force situation upon the arrival of relieving officers is standard procedure at Jackson Correctional Institution, and is consistent with my correctional officer training. While I maintain that I observed Inmate Henry attempting to harm himself with bed sheets already in his possession, to the extent Inmate Henry alleges the bed sheets were planted in his cell after Sgt. Dickens and Officer Stuart removed him from it, I would not have been present on the quad at that time, and have no knowledge of any individual who would take such an action.

(Doc. 76, Ex. B.)

Plaintiff has not submitted any evidence nor has he pointed to any evidence contravening Defendant's claim, made under oath, that Defendant exited the quad after the response team arrived at Plaintiff's cell. Plaintiff has therefore failed to adduce any evidence that Officer Lipford entered his cell either before or after the incident or any evidence that Officer Lipford conspired with unnamed others to plant the noose in Plaintiff's cell.

In addition to Officer Lipford's sworn declaration the other evidence of record further evidences that Officer Lipford and the other correctional officers did not have the

opportunity to place the noose in Plaintiff's cell. The hand held video, which begins with Lieutenant Lawrence making a statement in front of the cell door does not show Officer Lipford during any of the video thus corroborating his statement that he was not present when Plaintiff was removed from the cell. Further, the two correctional officers from the response team are present with the Plaintiff throughout the video thus demonstrating that these officers were not in a position to place a noose in Plaintiff's cell. Lastly, shortly after Plaintiff was taken to medical triage for examination, Doctor Gordon went to Plaintiff's cell and examined the noose. There is a complete absence of any evidence from the Plaintiff from the time of the incident to the time when Doctor Gordon went to the cell documenting that anyone entered the cell or even had access to the cell.  In sum, these factual gaps, coupled with Plaintiff's conclusional assertions and unsupported allegations that the noose was planted, are fatal to Plaintiff's claim.

In addition to the hand held video the investigation report of the incident further supports Officer Lipford's account of the events.  Department records disclose that Plaintiff was found to have had extra sheets in his cell and, thus, even though Plaintiff alleges his sheets were removed from his cell prior to being pepper sprayed, Plaintiff has failed to refute that he Plaintiff was still in possession of some sheets sufficient to fashion a noose. (Doc. 76, Ex. C.)

The Court has afforded Plaintiff wide latitude in opposing summary judgment, but expansive repetition does not infuse conclusional allegations with substance for summary judgment purposes.  Although Plaintiff argues that the fixed wing video would show precisely the events that occurred, the fixed wing video does not exist and thus

Plaintiff cannot defeat summary judgment by attempting to create an issue of fact by pointing to evidence which does not exist.

The only evidence that Plaintiff points to that in his view supports his claim that the noose was planted is the medical report by the nurse that no injuries were noted upon examination. According to Plaintiff, because the nurse did not observe any injuries it means he was not trying to hang himself. The fact that Plaintiff may not have had the noose around his neck long enough to inflict an injury does not mean he was not attempting to hang himself. Further, when he was examined by the nurse it was about a half hour after the incident[2] – and after Plaintiff had been given a cool water shower – thus explaining the lack of any redness or other injury.

The case does not present a classic case of a disputed genuine issue of material fact where an inmate swears under oath that excessive force was used and the correctional officer denies under oath that any such thing occurred. Rather, this case is one where the inmate has filed a conclusional claim that a noose was planted but has failed to come forward with any evidence providing details of how, when and even by whom the noose was planted. The Defendant, on the other hand, has filed detailed sworn evidence documenting what occurred and documenting that neither Defendant Lipford or the other correctional officers, who responded to the scene, had the opportunity to plant a noose.

Accordingly, for these reasons, Plaintiff has failed to demonstrate that there is a

---

[2] Plaintiff was peppered sprayed at about 7:35 AM and was examined by the Nurse in medical at about 8:05 AM. (Doc. 76, Ex. C.)

*Case No: 5:12-cv-34-RS-GRJ*

genuine dispute of material fact sufficient to preclude the entry of summary judgment and Defendant has demonstrated that because there is no genuine dispute of any material fact Defendant is entitled to summary judgment in his favor on Plaintiff's Eighth Amendment claim.

## B.   First Amendment Retaliation Claim

Plaintiff also alleges that Defendant Lipford pepper sprayed him in retaliation for Plaintiff previously filing grievances about prison guard misconduct.  This claim also fails for the following reasons.

The Eleventh Circuit has established a three-part test to determine whether Plaintiff has an actionable First Amendment claim.  Plaintiff must establish each of the following three elements:

(1) the inmate's speech was constitutionally protected;

(2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and

(3) there is a causal relationship between the retaliatory action and the protected speech.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); *see also Smith v. Mosley,*  532 F.3d 1270, 1276 (11th Cir. 2008).  Plaintiff bears the burden of proof on all three elements.

Applying this three-part *Bennett* test to Plaintiff's claims, the Court concludes that Plaintiff has failed to satisfy the necessary elements.

Turning to the first element, there is no real dispute that Plaintiff can satisfy the

first element, as his speech– filing grievances against prison guards– is constitutionally protected.  It "is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Mosley,* 532 F.3d at 1276.  "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints."  *Id*.

With regard to the second element, Plaintiff is not required to demonstrate that he personally was deterred from engaging in such speech, but rather that "a person of ordinary firmness" would be deterred from engaging in the protected speech.  *Id*. Plaintiff states that he was pepper sprayed in retaliation for previously filing grievances on prison staff.  While the record shows that Plaintiff filed a number of grievances while he has been incarcerated, thus suggesting that he was not deterred from exercising his right to file grievances, the standard is not whether Plaintiff was deterred but rather whether a person of ordinary firmness would be deterred from filing grievances. For purposes of summary judgment the Court concludes that being pepper sprayed in response to filing grievances would likely deter a person of ordinary firmness from filing grievances against prison staff.

Plaintiff cannot, however, satisfy the third element to demonstrate a claim for retaliation.  The third element asks whether the protected speech subjectively motivated the defendant to engage in the retaliatory conduct.  *Id.*  This causal connection, "asks whether the defendants were subjectively motivated to discipline because [Plaintiff]

complained of some of the conditions of his confinement." *Smith*, 532 F.3d at 1278 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)). Subjective motivation is evaluated under a burden-shifting standard under which the plaintiff initially bears the burden of establishing that his protected conduct was a motivating factor behind the alleged harm. *Id*. "'If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.'" *Id.*

Plaintiff avers in his complaint that he was pepper sprayed because he has previously filed grievances about prison staff. Plaintiff, however, does not point to any evidence that he even filed any grievances against Defendant, or that Defendant was even aware that Plaintiff had previously filed grievances against other staff members. Indeed, the vast majority of grievances Plaintiff submitted as summary judgment exhibits concern the behavior of Mr. Ralph, who is apparently a law clerk at Jackson C.I. Notably, these grievances are unrelated to any of the underlying issues in this case.

Thus, there is absolutely no evidence in this record beyond Plaintiff's bald allegations that the motivation for pepper spraying Plaintiff was because he had filed grievances. "Conclusory allegations of retaliation without 'some facts' that would indicate the retaliatory act was in retaliation for filing grievances is not sufficient." *Wineston v. Pack, no. 4:06cv438-RH/AK,* 2009 U.S. Dist. LEXIS 87834, *33 (N.D. Fla. Sept. 8, 2009) *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 87842 (N.D. Fla. Sept. 24, 2009).

The comment Plaintiff alleges Officer Lipford made to him before administering the pepper spray also does not support Plaintiff's claim for retaliation. Plaintiff says in his complaint that Defendant made a comment to him about the mail room incident– the incident over which Plaintiff was being held in confinement. Assuming Officer Lipford made the statement, the statement has nothing to do with Plaintiff filing grievances or pursuing the grievance process and therefore cannot demonstrate causation to support a claim for retaliation.

Plaintiff also states that it was his requests for the "policy under the directives of Chapter 33" from Defendant, and his request to declare a psychological emergency that precipitated the pepper spraying incident.  Again this allegation does not support Plaintiff's claim for retaliation because, as discussed above, Defendant has demonstrated on this record that he utilized the pepper spray to stop Plaintiff from injuring himself. As such, even if Plaintiff had declared a psychological emergency – as he alleges – Officer Lipford still would have been justified in using pepper spray to prevent Plaintiff from using the noose to injure himself.  Pepper spraying an inmate in order to prevent further self-injury by the inmate is authorized by Department rules, Fla. Admin. Code R. 33-602.210(2)(g) (2011), and thus even if an inmate declared a psychological emergency while he was engaging in self-injurious conduct, the correctional officer is entitled to summary judgment, where, as here, the officer would have taken the same action in the absence of protected activity.  In sum, the unrefuted evidence establishes that Defendant would have taken the same action– pepper spraying Plaintiff– regardless of whether Plaintiff had ever filed grievances on prison

staff previously or regardless of whether Plaintiff declared a psychological emergency. Accordingly, the Court concludes that summary judgment is warranted on Plaintiff's First Amendment retaliation claim.

## C. Qualified Immunity

Defendant also argues that he is entitled to summary judgment because he is entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Andujar v. Rodriguez,* 486 F.3d 1199,1202 (11th Cir. 2007) (citations omitted); *Brandon v. Holt,* 469 U.S. 464, 472-73 (1985.) There are two prongs to a qualified immunity test. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004.)  The U.S. Supreme Court has held that lower courts are permitted to exercise discretion in deciding which prong of the test to address first. *Pearson v. Callahan, 555* U.S. 223, 236 (2009.)

It is uncontested that Defendant was a state actor and at the time of the incident was acting within his discretionary authority. As such, the burden shifts to Plaintiff to show that Defendant is not entitled to qualified immunity.  Plaintiff has made no such showing, and, as discussed above, Plaintiff has not demonstrated that Defendant violated a constitutional right.   Accordingly, because Plaintiff has failed to establish that Defendant violated a constitutional right Defendant also is entitled to qualified immunity.

## IV.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant's Motion for Summary Judgment (Doc. 76) should be **GRANTED** and judgment should be entered in favor of Defendant.

**IN CHAMBERS**, at Gainesville, Florida, this 19th day of May 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**